# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

TIMOTHY SHAW, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VIRCUREX, ANDREAS ECKERT AKA KUMALA, and JANE OR JOHN DOE,

Defendants.

C.A. No. 1:18-cv-00067-MEH

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

**Page**

RELEVANT BACKGROUND ................................................................................................1

ARGUMENT ......................................................................................................................4

    I.      STANDARDS OF LAW ......................................................................................4

    II.     DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST THE DEFENDANTS ...........................................................................................6

             A.     Defendants Have Failed to Answer or Otherwise Defend.........................6

             B.     This Court has Personal and Subject Matter Jurisdiction ...........................7

             C.     Plaintiff's Well-Pleaded Allegations of Fact Support Default Judgment on Each of the Claims Against Defendants ......................................................8

                    1.     Defendants Breached their Contracts with the Class ......................8

                    2.     Defendants Unlawfully Converted the Class' Funds....................10

                    3.     Defendants Are Liable for Constructive Fraud............................11

                      4.     Defendants Were Unjustly Enriched as a Result of Their Misconduct...................................................................................12

    III.    DEFAULT JUDGMENT SHOULD BE ENTERED FOR 1,664.75 BTC AND 124,726 LTC WITH PREJUDGMENT INTEREST AND POSTJUDGMENT INTEREST THEREON .........................................................................13

    IV.    PLAINTIFF SEEKS REASONABLE ATTORNEYS' FEES .............................15

CONCLUSION..................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*AE, Inc. v. Goodyear Tire & Rubber Co.*,
    576 F.3d 1050 (10th Cir. 2009) ...............................................................................................14

*Aegis Spine, Inc. v. Aegis Spine Can., Ltd.*,
    No. 16-cv-2445-WJM-MJW, 2017 U.S. Dist. LEXIS 79161 (D. Colo. May 23,
    2017) ................................................................................................................................5, 8, 14

*Barnett v. Elite Props. of Am.*,
    252 P.3d 14 (Colo. App. 2010) ...............................................................................................11

*Bolsa Resources, Inc. v. Martin Resources, Inc.*,
    No. 11-cv-01293-MSK-KMT, 2014 U.S. Dist. LEXIS 138369 (D. Colo. Aug. 28,
    2014) ...................................................................................................................................8, 10

*Fairmount Fire Protection Dist. v. Up in Smoke Custom Burning, Inc.*,
    No. 11-cv-03250-REB-KMT, 2012 U.S. Dist. LEXIS 125029 (D. Colo. Aug. 30,
    2012) ..............................................................................................................................5, 7, 12, 14

*Galvin v. McCarthy*,
    No. 07-cv-00885-PAB-BNB, 2009 U.S. Dist. LEXIS 30041 (D. Colo. Mar. 31,
    2009) .........................................................................................................................................9

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ...............................................................................................................15

*In re Oil Spill by The Amoco Cadiz*,
    954 F.2d 1279 (7th Cir. 1992) ...............................................................................................14

*In re Rains*,
    946 F.2d 731 (10th Cir. 1991) .................................................................................................5

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
    2013 U.S. Dist. LEXIS 3521 (S.D.N.Y. Jan. 9, 2013)...........................................................15

*Reynolds v. Procollect, Inc.*,
    No. 12-cv-2484-WJM-BNB, 2013 U.S. Dist. LEXIS 101299 (D. Colo. July 19,
    2013) ................................................................................................................................5, 6, 13

*Rios v. Midwest Partitions, Inc.*,
    No. 15-cv-01456-PAB-MEH, 2016 U.S. Dist. LEXIS 172074 (D. Colo. Dec. 13,
    2016) .......................................................................................................................................15

*Robinson v. City of Edmond*,
    160 F.3d 1275 (10th Cir. 1998) .............................................................................................15

*Scott Sys., Inc. v. Scott*,
    996 P.2d 775 (Colo. App. 2000) ............................................................................................11

*United States v. Craighead*,
    176 F. App'x 922 (10th Cir. 2006)......................................................................................6, 13

*Volume Servs. v. Sweeny*,
No. 09-cv-01968-MSK-BNB, 2009 U.S. Dist. LEXIS 123295 (D. Colo. Dec. 3,
2009) .................................................................................................................................10

**Statutes**

28 U.S.C. § 1332(d) ..............................................................................................................7

28 U.S.C. § 1391 ...................................................................................................................7

Colo. Rev. Stat. §§ 5-12-101 *et seq*. ..................................................................................14

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................................1

Fed. R. Civ. P. 55 ........................................................................................................1, 5, 7, 13

Plaintiff Timothy Shaw ("Plaintiff"), who has brought the above-captioned action (the "Action") as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the Class,[1] by and through his undersigned counsel, respectfully moves this court pursuant to Federal Rule of Civil Procedure 55(b) and Local Rule 55.1, for default judgment against Defendants Vircurex, Andreas Eckert a/k/a "Kumala" ("Eckert"), and Jane or John Doe ("Doe") (collectively "Defendants").  Defendants have failed to answer or otherwise respond to Plaintiff's complaint, ECF No. 1 (the "Complaint" or "Compl."), and are in default.  The Complaint seeks compensatory, exemplary, punitive, injunctive, and specific performance relief.

Based on their default, the Court should enter the requested relief against Defendants.  This motion is based on this motion and incorporated memorandum of law (the "Motion"), the accompanying Affidavit of Donald J. Enright in Support of the Motion (the "Enright Aff."), all of the pleadings, files and records in this proceedings, all other matters of which this Court may take judicial notice, and any additional argument or evidence that may be presented to or considered by this Court prior to its ruling.

## RELEVANT BACKGROUND

Defendants Eckert and Doe launched an online digital currency exchange hosted on www.vircurex.com (the "Exchange") in October 2011.  Compl. ¶2.  Accountholders on the

---

[1]     Plaintiff is simultaneously filing his Motion for Class Certification, Appointment as Class Representative, and Appointment of Class Counsel (the "Motion for Class Certification").   As detailed in the Motion for Class Certification, the "Class" is defined as:

> all persons or entities that have had their Bitcoin ("BTC") and Litecoin ("LTC") funds frozen on the Vircurex online cryptocurrency exchange since March 24, 2014.  Excluded from the Class are Defendants in this litigation, the present and former officers and directors of Vircurex and any subsidiary thereof, members of Eckert's and Doe's immediate families and their legal representatives, heirs, successors or assigns and any entity in which any of the Defendants has or had a controlling interest."

Exchange could deposit USD and EUR to buy, sell, and exchange digital currencies. *Id*. Vircurex was not incorporated at this time, and there are indications it may have never been incorporated. *Id*. ¶¶25–26. For example, on September 25, 2012, Defendant Eckert responded to a question on the Bitcointalk forums regarding the corporate status of Vircurex and Cryptostocks.com with, "[n]either of them is incorporated at this point in time, its [sic] of rather low priority at the moment . . .." *Id*. ¶26. Similarly, when Defendants were purportedly taking Vircurex "public," in February 2013, they announced that while the business was not incorporated, they still had plans to incorporate Vircurex. *Id*. ¶27.

***The Frozen Funds***

On March 24, 2014, Defendants announced that due to two hacks the Exchange experienced in mid-2013, the Exchange was nearing insolvency and had to freeze accounts (the "2014 Announcement") holding BTC, LTC, Terracoin ("TRC"), and Feathercoin ("FTC") (collectively, the "Frozen Funds"). *Id*. ¶30.

The 2014 Announcement assured accountholders that Defendants would be returning the Frozen Funds in due course. *Id*. ¶¶30–31. On May 5, 2014, June 8, 2014, July 15, 2014, August 20, 2014, and January 3, 2016, Defendants provided updates on the repayments that had been made to the accounts with Frozen Funds. *Id*. ¶32. As of the January 3, 2016 update (the "January 2016 Update"), according to Defendants, the following number of accounts continued to have the following funds frozen:

- 328 accounts had 1,666 BTC frozen;

- 0 account had 0 FTC frozen;

- 2,162 accounts had 124,763 LTC frozen; and

- 39 accounts had 78,782 TRC frozen.

2

***Discouraging Legal Action***

Defendants took calculated, effective, steps that were clearly designed to dissuade Plaintiff and the Class from pursuing a potential legal action to recover their Frozen Funds. Compl. ¶39. In addition to slowly repaying minor amounts of the Frozen Funds, Defendants added terms and conditions to the Vircurex website (the "Terms") **after** they froze Plaintiff's and the Class' funds. *Id.* ¶41. The Terms were clearly designed to limit Defendants' liability and create hurdles for any accountholders that might consider pursuing legal action against Defendants. *Id.* ¶¶43–48. For example, the Terms included: (i) a broad indemnity clause; (ii) a transparent liability waiver with respect to Plaintiff's and the Class' Frozen Funds; (iii) and stated that accountholders "consented" to personal jurisdiction in Belize. *Id.* Defendants clearly chose to insert the Terms because they knew that they would not be returning the Frozen Funds and hoped to convince Plaintiff and the Class that it would be nearly impossible to take legal action against Defendants. *Id.* ¶49–56.

***Activities Following Initiation of the Action***

Following the January 2016 Update, Defendants did not provide an additional update regarding the status of the Frozen Funds for two years—until fifteen days after this Action was filed.[2] On January 25, 2018, Defendants announced that all TRC had been returned to accounts with Frozen Funds. *Id.* On February 13, 2018, Defendants announced that 1.25 BTC and 37 LTC had been returned to accounts with Frozen Funds. *Id.*

Indeed, Defendants slowly repaid some of the Frozen Funds over time, leading Plaintiff and the Class to believe that it was only a matter of time before they received access to their Frozen

---

[2] *See* Declaration of Donald J. Enright in Support of the Motion for Certification, Exhibit 1, ECF No. 15-1.

Funds.  Compl. ¶34.  While this Action appears to have prompted Defendants to return some additional funds to the Class, such repayments pale in comparison to the significant financial interests Class members are still denied access to—after four years.  For example, Defendants latest disbursement—after two years of silence—of 1.25 BTC represents a repayment of just .00075% of the BTC funds frozen as of the January 2016 Update.  Likewise, Defendants latest disbursement of 37 LTC represents a repayment of just .00029% of the total LTC funds frozen as of the January 2016 Update.

Based on the foregoing, as of the date of this filing, the Frozen Funds that are still being withheld from Plaintiff and the Class are as follows:

- 1,664.75 BTC; and

- 124,726 LTC.

## <u>ARGUMENT</u>

**I.      STANDARDS OF LAW**

Pursuant to Local Rule 55.1(b), a party seeking default judgment must specify:

(1) the party or parties in favor of whom judgment shall be entered;

(2) the party or parties against whom judgment shall be entered;

(3) when there are multiple parties against whom judgment shall be entered, whether the judgment shall be entered jointly, severally, or jointly and severally;

(4) the sum certain consisting of the principal amount, prejudgment interest, and the rate of postjudgment interest; and

(5) the sum certain of attorney fees enumerated in the document on which the judgment is based.

L. R. 55.1(b).

 "Default must enter against a party who fails to appear or otherwise defend a lawsuit."

*Reynolds v. Procollect, Inc.*, No. 12-cv-2484-WJM-BNB, 2013 U.S. Dist. LEXIS 101299, at *1

(D. Colo. July 19, 2013) (citing Fed. R. Civ. P. 55(a)).  After the Clerk submits an entry of default, "the party seeking relief against the defaulting party may apply to the court for a default judgment and, if the party seeking relief provides a proper basis for the entry of default judgment, the court may enter default judgment against the defaulting party."  *Fairmount Fire Protection Dist. v. Up in Smoke Custom Burning, Inc.*, No. 11-cv-03250-REB-KMT, 2012 U.S. Dist. LEXIS 125029, at *1–2 (D. Colo. Aug. 30, 2012) (citing Fed. R. Civ. P. 55(b)).

"'Default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.  In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.  The default judgment remedy serves as such a protection.'"  *Aegis Spine, Inc. v. Aegis Spine Can., Ltd.*, No. 16-cv-2445-WJM-MJW, 2017 U.S. Dist. LEXIS 79161, at *1–2 (D. Colo. May 23, 2017) (quoting *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991)).  However, "a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court."  *Aegis*, 2017 U.S. Dist. LEXIS 79161, at *2 (internal quotation marks and citation omitted).

Prior to granting a motion for default judgment, the Court must first "ensure it has personal jurisdiction over the defaulting defendant and subject matter jurisdiction over the action."  *Id.* (citations omitted).  Following this, the Court will then "consider whether the well-pleaded allegations of fact—which are admitted by the defendant upon default—support a judgment on the claims against the defaulting defendant."  *Id.* (citations omitted); *see also Reynolds*, 2013 U.S. Dist. LEXIS 101299, at *2 (setting forth same standard).

"Once the Court is satisfied that default judgment should be entered, it has the discretion to hold a hearing to determine the amount of damages."  *Id.* at *3 (citing Fed. R. Civ. P. 55(b)(2)).

However, a "damages hearing is not needed when the damages requested are for a sum certain." *Id*. at *7 (citing *United States v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006)).

## II.   DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST THE DEFENDANTS

### A.   Defendants Have Failed to Answer or Otherwise Defend

On January 10, 2018, Plaintiff, on behalf of himself and the Class, filed his Complaint alleging breach of contract, conversion, constructive fraud and unjust enrichment claims against Defendants.  The Complaint seeks compensatory, exemplary, punitive, injunctive, and specific performance relief, providing repayment of all of the Frozen Funds, and securing and conserving such funds until repayment.  Compl. ¶7.

On February 20, 2018, Plaintiff filed his Motion for Leave to Effect Alternative Electronic Service on Defendants Outside of the United States.  ECF No. 6 ("Motion for Alternative Service"); Memorandum of Law in Supp. of the Mot. for Alternative Service, ECF No. 7; Decl. of John A. Carriel, ECF No. 7-1.  On February 21, 2018, this Court granted Plaintiff's Motion for Alternative Service.  Order Permitting Substituted Service, ECF No. 9.

On February 22, 2018, Plaintiff's counsel served Defendants with copies of the Complaint, ECF No. 1; the Order Permitting Substituted Service, ECF No. 9; the Summonses for Vircurex, Andreas Eckert a/k/a "Kumala," and Jane or John Doe, ECF No. 8; and the Consent/Non-Consent to the Exercise of Jurisdiction by a United States Magistrate Judge in District Assignment Cases form, ECF No. 8, pursuant to the methods outlined in this Court's Order Permitting Substituted Service, ECF No. 9.  *See* Affidavit of John A. Carriel ¶2, ECF No. 10.

An answer to the Complaint was due March 15, 2018.  Enright Aff. ¶5.  Defendants have failed to appear, plead or otherwise defend within the time allowed and are therefore, now in

default. *Id*. ¶6. To the undersigned counsel's knowledge, Defendants are not infants or incompetent persons, nor are they subject to the Service Members Civil Relief Act. *Id*. ¶8–9.

On March 19, 2018, this Court held a Status Conference during which it ordered the Clerk of the Court to enter a default against Andreas Eckert, Vircurex and Jane/John Doe. Courtroom Minutes/Minute Order Status Conference, ECF No. 12. Shortly thereafter, the Clerk of the Court submitted an entry of default as to Vircurex, Eckert and Doe. ECF No. 13.

Based on the foregoing, the prerequisites for seeking an entry of default have been satisfied and consideration of Plaintiff's request for default judgment is appropriate. *See, e.g.*, *Fairmount*, 2012 U.S. Dist. LEXIS 125029, at *1–2 ("After default has entered, the party seeking relief against the defaulting party may apply to the court for a default judgment and, if the party seeking relief provides a proper basis for the entry of default judgment, the court may enter default judgment against the defaulting party.") (citing Fed. R. Civ. P. 55(b)).

## B.    This Court has Personal and Subject Matter Jurisdiction

The Court has personal jurisdiction over each of the Defendants because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Compl. ¶9.

Similarly, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) (diversity jurisdiction) because the amount in controversy exceeds $5,000,000 and because Plaintiff is a citizen of Colorado, members of the proposed class are citizens of different states, and Defendants are subjects and citizens of foreign states. *Id*. ¶8.

Venue is proper in this District under 28 U.S.C. § 1391, because: (a) the conduct at issue took place and had an effect in this District; (b) a substantial portion of the corporate transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial

compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.  *Id.* ¶10.

### C.     Plaintiff's Well-Pleaded Allegations of Fact Support Default Judgment on Each of the Claims Against Defendants

As noted, "[i]n determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true."  *Aegis*, 2017 U.S. Dist. LEXIS 79161, at *2 (citation and quotation marks omitted).  Here, the Complaint alleges claims for: (1) Breach of Contract; (2) Conversion; (3) Constructive Fraud; and (4) Unjust Enrichment.  As set forth below, each of these claims are supported ample factual allegations in the Complaint.

### 1.     Defendants Breached their Contracts with the Class

To establish a breach of contract claim against Defendants, Plaintiff must show: "(1) the existence of a contract between Plaintiff and [Defendants]; (2) performance by Plaintiff; (3) [Defendants] breached the contract; and (4) Plaintiff was damaged by [Defendants'] breach." *Bolsa Resources, Inc. v. Martin Resources, Inc.*, No. 11-cv-01293-MSK-KMT, 2014 U.S. Dist. LEXIS 138369, at *15 (D. Colo. Aug. 28, 2014) (citations omitted).

Defendants froze Plaintiff's and the Class' funds on March 24, 2014.  Compl. ¶30. Defendant Vircurex's website did not contain the Terms prior to Defendants freezing Plaintiff's and the Class' funds.  *Id.* ¶¶41–47.  However, it did contain an express representation that accountholders could immediately withdraw their funds.  *Id.* ¶59.  Specifically, the Vircurex website stated:

**Deposit/Withdraw**

Deposit or withdraw your coins anytime. Withdrawals will be executed immediately to any address you wish to. Do take note that all withdrawals are final, there is no possibility to cancel or undo a withdrawal. Deposits will require confirmations before the funds are freely available for trading activities. See the

fees section on this page for details on the current number of confirmations required. Fees apply for withdrawals. See the fees section for the current valid fees.

*Id.*

This representation was made for the purposes of causing Plaintiff and the Class to deposit cryptocurrency on the Vircurex exchange, and was an undertaking made in return for the consideration of such deposits.  As such, this constituted an enforceable contract.  *See, e.g.*, *Galvin v. McCarthy*, No. 07-cv-00885-PAB-BNB, 2009 U.S. Dist. LEXIS 30041, at *16–17 (D. Colo. Mar. 31, 2009) (stating that "[c]ontract formation requires mutual assent to an exchange between competent parties -- where an offer is made and accepted -- regarding a subject matter which is certain, and for which there is legal consideration" and noting that "in Colorado, the standard for finding the existence of consideration does not set a high bar."  For example, "[a] benefit to the promisor or detriment to the promisee can constitute consideration, however slight") (internal quotation marks and citations omitted).

Thus, Plaintiff and the Class deposited their funds on the Exchange with the expectation that, based on Defendants express representations, they would be able to withdraw their deposits "anytime" and that such withdrawals would be "executed immediately."  Compl. ¶60.  Despite Plaintiff and the Class fulfilling their responsibilities (to deposit their funds on the Exchange), Defendants disabled the ability to withdraw the Frozen Funds on March 24, 2018 – and thereby breached the agreement.  *Id.* ¶¶3–4, 30, 60.  Due to Defendants' control over Plaintiff's and the Class' funds and restraining access to the Frozen Funds, Defendants have breached an express or implied contract with Plaintiff and the Class.  *Id.* ¶61.  Defendants' unlawful actions have caused, and are continuing to cause, significant financial harm to Plaintiff and the Class.  *Id.* ¶7.

Accordingly, "Plaintiff has presented well-pleaded facts which support each element of the claim of breach of contract" and thus, "default judgment on the claim is appropriate." *Bolsa*, 2014 U.S. Dist. LEXIS 138369, at *20.   Hence, the Court should order Defendants to perform as represented and direct Defendants to return the Frozen Funds to Plaintiff and the Class.   Compl. ¶62.

## 2. Defendants Unlawfully Converted the Class' Funds

"Under Colorado law, conversion is any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another . . . A conversion may include the unauthorized retention of the money of another." *Volume Servs. v. Sweeny*, No. 09-cv-01968-MSK-BNB, 2009 U.S. Dist. LEXIS 123295, at *6 (D. Colo. Dec. 3, 2009) (internal quotation marks and citations omitted).

As set forth in the Complaint, Defendants exercised complete control over Plaintiff's and the Class' funds on Defendants' online Exchange.   Compl. ¶64.   Defendants disabled Plaintiff's and the Class' ability to withdraw their funds on March 24, 2014.   *Id.* ¶¶3–4, 30, 65.   Due to Defendants' unlawful restraint and retention of the Frozen Funds, Plaintiff's and the Class' rights to their funds have been interfered with, and such funds are presumed to have been stolen.   *Id.* ¶¶ 66–67.   Defendants' unlawful conversion of the Frozen Funds has caused significant economic damage to Plaintiff and the Class.   *Id.* ¶¶7, 57, 69.   Stated otherwise, Defendants have exercised unauthorized dominion and control over Plaintiff's and the Class' deposited funds, and thereby "converted money and/or other personal property belonging to" Plaintiff and the Class and therefore, default judgment on Plaintiff's conversion claim is warranted.   *Volume*, 2009 U.S. Dist. LEXIS 123295, at *7.

### 3.     Defendants Are Liable for Constructive Fraud

"Constructive fraud" is an "equitable theory of relief" stemming from the "breach of a legal or equitable duty that the law declares to be fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests, irrespective of the moral guilt of the perpetrator." *Barnett v. Elite Props. of Am.*, 252 P.3d 14, 23 (Colo. App. 2010) (citations omitted).  A claim for constructive fraud requires: "'(1) the existence of a duty due to a relationship between the parties; (2) violation of the duty by making deceptive material representations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party proximately caused thereby; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party.'"  *Id*. (quoting *Scott Sys., Inc. v. Scott*, 996 P.2d 775, 780 (Colo. App. 2000)).   Here, each of the foregoing elements are plainly satisfied.

First, due to Defendants' control of Plaintiff's and the Class' funds, and Defendants' express representation that they would return such funds "immediately" upon request, Defendants had a special relationship or fiduciary relationship with Plaintiffs.  Compl. ¶¶ 59, 71–72.  Second, Defendants violated that duty by deceptively and unjustly withholding funds rightfully belonging to Plaintiff and the Class.  *Id*. ¶73.  Furthermore, Defendants engaged in clear deceptive activity, such as repeatedly assuring Plaintiff and the Class that the Frozen Funds would be paid back in due time and subsequently adding liability waivers and indemnity clauses to Defendant Vircurex's website, terms which had not existed prior to Defendants' unlawful and unjust freezing of Plaintiff's and the Class' funds.  *Id*. ¶¶34, 74.  Such deceptive statements and representations were successful in discouraging Plaintiff and the Class from pursuing legal action, and it is thus clear that Class members relied upon such deceptive statements.  *Id*. ¶50.  For example, in September

2017, the topic of potential legal action against Vircurex was raised on a forum on reddit.com.  In this forum, a user responded to a post by an accountholder considering legal action by stating:

> Not sure about the current situation. But I'm sure you agreed to the TOS when you signed up on Vircurex. Here it is:
>
> https://vircurex.com/welcome/terms?locale=en
>
> Limited liability of user funds
>
> *Vircurex takes no liabilities on users funds stored with Vircurex.*
>
> Vircurex is incorporated in Belize so you may have to take a vacation there to file in court.
>
> *These Terms and Conditions are governed by the laws of Belize, without respect to its conflict of law principles*

*Id*. ¶48.

Defendants' unlawful withholding of Plaintiff's and the Class' funds and deceptive representations and activities designed to prevent Class members from exercising their rights to seek legal recourse have caused significant economic damage to Plaintiff and the Class.  *Id*. ¶75. Accordingly, the Complaint's allegations are sufficient to establish each element for a constructive fraud claim.

### 4.        Defendants Were Unjustly Enriched as a Result of Their Misconduct

A claim for unjust enrichment is pleaded by "showing that the defendant received a benefit, at the plaintiff's expense, under circumstances that would make it unjust for defendant to retain the benefit. . . . Essentially, unjust enrichment allows for restitution under circumstances where the benefit to the defendant was derived to the unfair detriment of the plaintiff."  *Fairmount*, 2012 U.S. Dist. LEXIS 125029, at *3 (citations omitted).

Here, Defendants have reaped the benefits of operating an illegal digital currency exchange and causing the loss, or conversion, of the funds rightfully belonging to Plaintiff and the Class.

Compl. ¶78.  It would be unconscionable and against the fundamental principles of justice, equity, and good conscience for Defendants to retain the substantial monetary benefits they have received as a result of their misconduct.  *Id*. ¶79.  Accordingly, Defendants have been unjustly enriched as a result of their misconduct and thus, the Court should order Defendants to immediately return the Frozen Funds and disgorge any amounts received by Defendants as a result of their misconduct alleged in this Action.  *Id*. ¶80.

In sum, the Complaint's claims are each supported by well-pleaded factual actions and hence, default judgment is appropriate.

## III. DEFAULT JUDGMENT SHOULD BE ENTERED FOR 1,664.75 BTC AND 124,726 LTC WITH PREJUDGMENT INTEREST AND POSTJUDGMENT INTEREST THEREON

As noted, "[o]nce the Court is satisfied that default judgment should be entered, it has the discretion to hold a hearing to determine the amount of damages."  *Reynolds*, 2013 U.S. Dist. LEXIS 101299, at \*3 (citing Fed. R. Civ. P. 55(b)(2)).  However, a "damages hearing is not needed when the damages requested are for a sum certain."  *Id*. at \*7 (citing *Craighead*, 176 F. App'x at 925).

As noted, Defendants did not provide an additional update regarding the status of the Frozen Funds for two years—until fifteen days after this Action was filed.[3]  On January 25, 2018, Defendants announced that all TRC had been returned to accounts with Frozen Funds.  *Id*.  On February 13, 2018, Defendants announced that 1.25 BTC and 37 LTC had been returns to accounts with Frozen Funds.  *Id*.  Accordingly, as of the date of this filing, Plaintiff believes the Frozen Funds that are still being withheld from the Class are as follows:

- 1,664.75 BTC; and

---

[3] *See supra* note 2 and accompanying text.

- 124,726 LTC.

Therefore, Plaintiff seeks specific performance and rescission of 1,664.75 BTC and 124,726 LTC.

"'It is well-established that a federal court sitting in diversity applies state law, not federal law, regarding the issue of pre-judgment interest.'" *Aegis*, 2017 U.S. Dist. LEXIS 79161, at *8 (quoting *AE, Inc. v. Goodyear Tire & Rubber Co.*, 576 F.3d 1050, 1055 (10th Cir. 2009)). Colorado's provision for prejudgment interest is located in Colo. Rev. Stat. §§ 5-12-101 *et seq.* Pursuant § 5-12-102(1)(b), the interest "rate of eight percent per annum compounded annually [applies] for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever occurs first." Similarly, under § 5-12-102(4)(b), an interest rate of "eight (8) percent per annum, compounded annually" applies "from the date judgment is entered in the case until the full amount of the judgment has been paid to the plaintiff by the defendant." *Fairmount*, 2012 U.S. Dist. LEXIS 125029, at *6.

Defendants unlawfully and unjustly deprived Plaintiff and the Class of their rights to access their funds (the Frozen Funds) on March 24, 2014.   Accordingly, Plaintiff requests that prejudgment interest be calculated from March 24, 2014 (the date in which the claim arose) through to the date judgment enters in this case. *See, e.g.*, *Aegis*, 2017 U.S. Dist. LEXIS 79161, at *9.  Because this Action relates to transactions conducted solely in BTC and LTC and Plaintiff, on behalf of himself and the Class, seeks rescission -- the return of Plaintiff's and the Class' BTC and LTC -- Plaintiff respectfully requests that prejudgment interest be applied to the **1,664.75 BTC** and **124,726 LTC** prior to conversion, if any, to U.S. Dollars.  *See, e.g.*, *In re Oil Spill by The Amoco Cadiz*, 954 F.2d 1279, 1328 (7th Cir. 1992) ("The court should enter the judgment in the

currency the parties themselves selected for their dealings, the currency in which the loss is felt."); *see also Liberty Media Corp. v. Vivendi Universal, S.A.*, 2013 U.S. Dist. LEXIS 3521, at *9–11 (S.D.N.Y. Jan. 9, 2013) ("[I]t is beyond dispute that the euro is the currency in which Liberty Media bore risks and suffered losses. . . . Accordingly, judgment will be entered in euros without conversion to U.S. dollars.").

In sum, Plaintiff requests a sum certain principal of 1,664.75 BTC and 124,726 LTC and pre and post-judgment interest at the rate of eight (8) percent per annum, compounded, beginning on March 24, 2014.

## IV.   PLAINTIFF SEEKS REASONABLE ATTORNEYS' FEES

Local Rule 55.1 requires a Plaintiff seeking default judgment to provide the "sum certain of attorney fees enumerated in the document on which the judgment is based." "To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable.' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (citations omitted). "The lodestar calculation is the product of the number of attorney hours "reasonably expended" and a "reasonable hourly rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Following such calculation, "[t]he lodestar amount may then be adjusted based upon several factors, including the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, and the degree of success achieved." *Rios v. Midwest Partitions, Inc.*, No. 15-cv-01456-PAB-MEH, 2016 U.S. Dist. LEXIS 172074, at *14 (D. Colo. Dec. 13, 2016) (citation omitted).

As set forth in the attached Affidavit of Donald J. Enright, Plaintiff's counsel expended a total of 196.95 hours in this Action and have a lodestar of $93,036.75.  Enright Aff. ¶¶11, 16.  The hourly rates of attorneys who performed work on this matter range from $425 to $925.  *Id.*  ¶17. Plaintiff's counsel's hourly rates are believed to be consistent with rates charged by other attorneys with similar skills and experience .  *Id*. ¶18.

Notwithstanding the foregoing costs and expenses, Plaintiff's counsel anticipates that significantly more time and expenses will be incurred, should this Court grant the instant motion, in attempting locate Defendants and enforce a default judgment.  *Id*. ¶12.  For example, Plaintiff's counsel expects to seek discovery from multiple companies which likely have information on Defendant Eckert and Doe's identities and locations – including providers of email/chat services, webhosting platforms, and internet services – and to expend scores of additional attorney hours analyzing such discovery, tracing funds and potentially enforcing the judgment in a foreign jurisdiction.  *Id*.  Accordingly, Plaintiff reserves the right to seek attorneys' fees in the amount of $1 million, as well as remuneration for any out-of-pocket expenses incurred in the prosecution of this Action and in enforcing any judgment.

## **CONCLUSION**

For the reasons set forth above, Plaintiff, on behalf of himself and the Class, seeks an entry of default judgment against Defendants—who shall be held jointly and severally liable—for the principal amounts of 1,664.75 BTC and 124,726 LTC, which shall include thereon, pre and post-judgment interest at the rate of eight (8) percent per annum, compounded annually, beginning on March 24, 2014.[4]  Additionally, Plaintiff requests attorneys' fees of up to $1,000,000.00, plus remuneration of out of pocket expenses.

---

[4] As of July 17, 2018, this equates to prejudgment interest of 657.207 BTC and 49,239.426 LTC.

## L.R. 7.1(a) CERTIFICATION

Given that Defendants have yet to appear in the instant action and Plaintiff's counsel has been unable to locate Defendants, the conferral requirements of L.R. 7.1(a) have not been met.

Dated: July 18, 2018

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

/s/ *Donald J. Enright*
Donald J. Enright
E-mail: denright@zlk.com
John A. Carriel
E-mail: jcarriel@zlk.com
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Fax: (202) 333-2121

*Attorneys for Plaintiff Timothy Shaw*