IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 18-cv-00067-PAB-SKC

TIMOTHY SHAW, individually and on behalf of all others similarly situated,

   Plaintiff,

v.

VIRCUREX,
ANDREAS ECKERT, a/k/a Kumala, and
JANE OR JOHN DOE,

   Defendants.

---

### ORDER

---

   This matter is before the Court on Plaintiff's Motion for Default Judgment and

Incorporated Memorandum of Law [Docket No. 16].

## I. BACKGROUND

   This case arises from the collapse of an online "digital currency" exchange.

Defendants Andreas Eckert ("Eckert") and an unknown individual ("Doe") founded

defendant Vircurex, a business that operated a currency exchange ("the exchange")

located at www.vircurex.com.[1]  Docket No. 1 at 2, ¶¶ 1-2.  Accountholders in the

exchange could deposit dollars and euros and use the funds to buy, sell, and exchange

digital currencies such as Bitcoin, Litecoin, Terracoin, and Feathercoin.  *Id*.  Plaintiff

believes that thousands of individuals used the exchange.  *Id*. at 8, ¶ 17.   Plaintiff, a

---

[1] Because of the Clerk of Court's entry of default, Docket No. 13, the allegations
in plaintiff's complaint, Docket No. 1, are deemed admitted.  *Olcott v. Del. Flood Co.*,
327 F.3d 1115, 1125 (10th Cir. 2003).

Colorado domiciliary, created an account on the exchange in December 2013. *Id*. at 4, ¶ 11. On March 24, 2014, plaintiff attempted to exchange his Dogecoin, another type of virtual currency, into Bitcoin and then withdraw the Bitcoin. *Id*. Defendants converted the Dogecoin into Bitcoin, but they froze his account before he could withdraw the Bitcoin. *Id*. Defendants subsequently announced that Vircurex was nearing insolvency and that accounts containing Bitcoin, Litecoin, Terracoin, and Feathercoin would be frozen (the "frozen funds"). *Id*. at 10-11, ¶ 30. Defendants paid out a minimal amount of the frozen funds to accountholders through January 3, 2016. *Id*. at 12-14, ¶¶ 32-34. Since January 3, 2016, defendants have not paid out any frozen funds. *Id*. at 14, ¶ 33.

Plaintiff filed this class action lawsuit on January 10, 2018 asserting state law claims for breach of contract, conversion, constructive fraud, and unjust enrichment. *Id*. at 21-23, ¶¶ 58-80. At the time this action was filed, the frozen funds were worth approximately $50,000,000. *Id*. at 2, ¶ 1 n.2. After defendants failed to respond to the complaint or otherwise appear in the action, the Clerk of the Court entered default against defendants on March 19, 2018. Docket No. 13. On July 18, 2018, plaintiff filed a motion for default judgment. Docket No. 16. Plaintiff also filed a motion asking the Court to certify the class, appoint plaintiff as class representative, and appoint plaintiff's counsel as class counsel. Docket No. 14.

## II.  LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55. First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a). Second, after default has been entered by the

Clerk, the party must seek judgment under the strictures of Rule 55(b). *See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott*, 327 F.3d at 1124 (citation omitted). In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* It serves to protect plaintiffs against "interminable delay and continued uncertainty as to his rights." *Id.* at 733. When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard"). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* Charles Wright, Arthur Miller &

3

Mary Kane, Fed. Prac. & Proc. § 2688 (3d ed. 2010).  "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Id.* at 63.  A court need not accept conclusory allegations.  *Moffett v. Halliburton Energy Servs., Inc.* 291 F.3d 1227, 1232 (10th Cir. 2002).  Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

## III.  ANALYSIS

### A.  Personal Jurisdiction

Before addressing the merits of plaintiff's motion for default judgment, the Court must determine whether it has subject matter and personal jurisdiction over this case. *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case").

4

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014); *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).  The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process.  *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).  Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).  Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction.  Where general jurisdiction is asserted over a nonresident defendant who has not consented to suit in the forum, minimum contacts exist if the plaintiff demonstrates that the defendant maintains "continuous and systematic general business contacts" in the state. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).  Plaintiff does not argue that defendants are subject to general jurisdiction in Colorado.  *See* Docket No. 16 at 7.  Therefore, the Court limits its discussion to the issue of

specific jurisdiction.

Specific jurisdiction is present only if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). The specific jurisdiction analysis is two-fold. First, the Court must determine whether a defendant has such minimum contacts with Colorado that the defendant "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Within this inquiry, the Court must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and whether plaintiff's claim arises out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted). Second, if defendant's actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction over defendant offends "traditional notions of fair play and substantial justice." *Id.* at 105. This latter inquiry requires a determination of whether the Court's exercise of personal jurisdiction over the defendant is "reasonable" in light of the circumstances of the case. *Id.* Plaintiff asserts that defendants "each ha[ve] sufficient minimum contacts with this District as to render the exercise of jurisdiction . . . permissible under traditional notions of fair play and substantial justice." Docket No. 16 at 11.

The purposeful direction requirement "ensures that a defendant will not be haled

6

into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475. The Tenth Circuit has outlined three frameworks courts use to evaluate whether the defendant purposefully directed its activities at forum residents that courts apply when the case involves a contract dispute and/or a website. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017).[2] None of the frameworks indicates that defendants purposefully directed their activity at Colorado.

### 1.  Continuing Relationships With Forum State Residents

"The typical purposeful direction analysis looks to the out-of-state defendant's 'continuing relationships and obligations with the citizens of the forum state.'" *Id.* at 905 (quoting *Burger King*, 471 U.S. at 473) (internal alterations omitted). "[A] defendant's relationship with a plaintiff, or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). However, jurisdiction may be exercised over defendants who have "enter[ed] a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum [s]tate." *Id.* at 285 (quoting *Burger King*, 471 U.S. at 479-80). Courts evaluate (1) the parties' prior negotiations, (2) their contemplated future consequences, (3) the terms of the contract, and (4) the parties' actual course of dealing. *See Old Republic*, 877 F.3d at 910.

Plaintiff, a Colorado resident, alleges that he created an account on Vircurex.

---

[2] In *Old Republic*, the Tenth Circuit held that defendant, who maintained a website where airplane repair businesses could obtain access to repair manuals in exchange for an annual fee, did not have "purposeful direction" aimed at Colorado that would subject it to specific personal jurisdiction. *See Old Republic*, 877 F.3d at 900, 909-10.

Docket No. 1 at 4, ¶ 11.  Plaintiff does not identify what this process includes or what information defendants collect about each accountholder.  When plaintiff attempted to exchange his Dogecoin for Bitcoin, Vircurex accepted plaintiff's Dogecoin, converted it to Bitcoin, and subsequently froze his account rather than allowing plaintiff to withdraw his funds.  *Id*.  Assuming that plaintiff entered into a contract with Vircurex, that fact alone is insufficient to establish a continuing relationship.  *See Burger King*, 471 U.S. at 478.  Plaintiff's complaint offers no evidence that the account creation process involved any negotiations or that the parties contemplated any future consequences.  Plaintiff does not provide the terms of any contract between the parties.  And plaintiff does not indicate that defendants engaged in any solicitation or direct communication that would show a course of dealing.  *See Old Republic*, 877 F.3d at 912 (finding no purposeful direction where defendant's website showed that it sought the business of any buyer in the world, as opposed to soliciting a specific contract).  Accordingly, the Court finds that plaintiff has not shown that defendants established a continuing relationship with Colorado.

### 2.   *Deliberate Exploitation of the Forum State Market*

"An out-of-state defendant's 'continuous and deliberate exploitation of the forum state market' may also satisfy the purposeful direction requirement."  *Old Republic*, 877 F.3d at 905-06 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984)) (internal alterations omitted).  "Factors suggesting purposeful direction based on forum state market exploitation include: (a) high sales volume and large customer base and revenues, and (b) extensive nationwide advertising or ads targeting the forum state."

*Id*. at 914-15 (collecting cases).  Courts have applied this framework in cases where "the out of state defendant's only contacts with the forum state occurred over the internet."  *Id*. at 906 (discussing *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 427 (7th Cir. 2010), and *be2 LLC v. Ivanov*, 642 F.3d 555, 558-59 (7th Cir. 2011)).

Plaintiff believes that "there are thousands of members in [the proposed class]" who used the Vircurex exchange and that the frozen funds of all accountholders are worth approximately $50,000,000.  Docket No 1 at 2, ¶ 1 n.2 and at 8, ¶ 17.  However, plaintiff makes no allegation that defendants advertised the exchange, either in the United States generally or in Colorado specifically.  *See uBID, Inc.*, 623 F.3d at 427 (purposeful direction found where defendant aired television advertisements on national networks, resulting in hundreds of thousands of customers in the forum state).  Further, plaintiff makes no allegation regarding what subset of the frozen funds originated in Colorado and therefore cannot show that defendants made regular sales in Colorado.  *See Keeton*, 465 U.S. at 781.  Without showing "sufficiently extensive Colorado sales, revenues, or advertising" related to the frozen funds, plaintiff fails to establish that defendants purposefully directed their activities at Colorado under the deliberate exploitation framework.  *See Old Republic*, 877 F.3d at 915.

### 3.   *Harmful Effects in the Forum State*

Finally, purposeful direction may be established "when an out-of-state defendant's *intentional* conduct targets and has substantial harmful effects in the forum state."  *Id*. at 907.  In the Tenth Circuit, the harmful effects test requires (1) an intentional action by defendants, (2) expressly aimed at the forum state, and (3)

knowledge by defendants that the brunt of the injury would be felt in the forum state. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008) (applying *Calder v. Jones*, 465 U.S. 783 (1984)).  In the internet context, the emphasis is on "the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011).  Courts "look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id*.

Based on the allegations in the complaint, the Court cannot conclude that defendants expressly aimed their actions at Colorado or knew that the brunt of plaintiff's injury would be felt here.  Plaintiff does not allege that defendants expressly aimed their activities at Colorado.  Further, plaintiff does not show that defendants had any awareness that plaintiff was located in Colorado.  *See Dudnikov*, 514 F.3d at 1077 (defendants' knowledge that plaintiffs were located in Colorado supported exercise of jurisdiction there).  While plaintiff created an account on Vircurex, plaintiff does not indicate that he gave defendants his location in creating that account.  *See* Docket No. 1 at 4, ¶ 11.  The only alleged connection between defendants and Colorado is harm suffered by a Colorado resident.  More is required.  *See Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.")  Therefore, plaintiff fails to show purposeful direction under the harmful effects test.

Under any of the three purposeful direction frameworks, the Court finds that

defendants did not purposefully direct their activities toward Colorado.  Therefore, the Court does not have personal jurisdiction over defendants.

### B.   Transfer

Although plaintiff does not request a transfer to another judicial district, the Court is required to "evaluate[] the possibility of transferring [plaintiff's] claims" even in the absence of a motion to transfer.  *Trujillo*, 465 F.3d at 1223.  The Court is required to transfer cases in order to cure jurisdictional defects where "it is in the interest of justice." 28 U.S.C. § 1631.  The Court is unaware of any judicial district to which the case could be transferred that would have personal jurisdiction over defendants.  The only location in the United States mentioned in plaintiff's complaint is Colorado.  *See* Docket No. 1. As the defect in personal jurisdiction could not be cured by a transfer to another judicial district, the Court will dismiss the case without prejudice.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Default Judgment and Incorporated Memorandum of Law [Docket No. 16] is **DENIED** without prejudice.  It is further

**ORDERED** that Plaintiff's Motion for Class Certification, Appointment as Class Representative, and Appointment of Class Counsel [Docket No. 14] is **DENIED**.  It is further

**ORDERED** that all claims against defendants are **DISMISSED** without prejudice for lack of personal jurisdiction.  It is further

**ORDERED** that this case is closed.

DATED February 20, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge